1  **WO**

7  **IN THE UNITED STATES DISTRICT COURT**

8  **FOR THE DISTRICT OF ARIZONA**

Joe Leonard Lambright,                    )    No. CV-87-235-TUC-JMR
                                          )
           Petitioner,                    )
                                          )
vs.                                       )
                                          )
Charles L. Ryan, et al.,                  )    **ORDER**
                                          )
           Respondents.                   )
                                          )
                                          )

        On December 21, 2009, the Ninth Circuit Court of Appeals remanded this matter for
further proceedings concerning Petitioner's Motion for Order to Show Cause (Dkt. 349) and
Respondents' Motion to Modify Protective Order (Dkt. 345). *Lambright v. Ryan*, No. 09-
99000 (9th Cir. Dec. 21, 2009).   Subsequently, the parties filed supplemental briefs
concerning the pending motions, and Petitioner filed a motion requesting discovery, an
evidentiary hearing, and disqualification of the Arizona Attorney General's Office (AAGO)
from this matter.  (Dkts. 373-80.)  On April 26, 2009, the Court heard argument on all of the
pending motions.

        After consideration of the arguments and pleadings, the Court concludes that neither
an evidentiary hearing nor disqualification of the AAGO is required.  The Court further finds
that, although Respondents violated the Court's protective order, Petitioner's request to
prohibit the Pima County Attorney at resentencing from using any of the materials developed

during these habeas proceedings is not warranted.  Finally, the Court determines that its protective order should be modified.

**BACKGROUND**

In 2003, during discovery in preparation for an evidentiary hearing on a claim of ineffective assistance of counsel at sentencing, Petitioner moved for an order of protection to limit "the scope of questioning of Petitioner at his deposition" to only those matters relevant to the ineffectiveness claim before the Court.  (Dkt. 248 at 1.)  In support of the motion, Petitioner argued that there was no legal basis for questioning him about the crime for which he was convicted and that inquiries about the crime would violate his right against self-incrimination under the Fifth Amendment.  (*Id.* at 2.)  The same day Petitioner filed his motion, the Ninth Circuit Court of Appeals issued a ruling in *Summerlin v. Stewart*, 341 F.3d 1082 (9th Cir. 2003) (en banc), *rev'd*, 542 U.S. 348 (2004), holding that the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), applied retroactively to prisoners such as Petitioner whose direct appeals had been final when *Ring* was decided.  Believing he was now entitled to a new sentencing proceeding, Petitioner asserted that Respondents must be restricted from questioning him about the facts of the crime because "such questioning provides clear opportunity to the attorneys to gather evidence in aggravation" for use at resentencing.  (Dkt. 256 at 2.)

At oral argument on the motion, Petitioner's counsel asked that the motion for protective order be considered instead a motion to prohibit Respondents from taking Petitioner's deposition "because he is going to be resentenced, and he is entitled to not take the stand."  (RT 9/9/2003 at 8.)  The Court denied the motion but agreed that a protective order should issue to "preclude the state, absent future order of the court," from using "statements made by petitioner during the course of discovery in connection with the habeas petition."  (*Id.* at 13.)  In so ruling, the Court stated that it was guided by two case decisions. (*Id.* at 12.)  The first, *Bean v. Calderon*, 166 F.R.D. 452, 453-54 (E.D. Cal. 1996), recognized the right of a habeas petitioner to invoke the Fifth Amendment during habeas proceedings

(albeit at the risk of the court drawing an adverse inference from his refusal to testify). The second, *Bittaker v. Woodford*, 331 F.3d 715, 727-28 (2003) (en banc), held that a protective order is necessary to preclude use of privileged attorney-client materials for any purpose other than litigating a federal habeas claim.

At the conclusion of argument, the Court issued the following order:

> **IT IS FURTHER ORDERED** that all discovery granted to Respondents, including the requests to depose sentencing counsel Brogna, Petitioner's experts and Petitioner, shall be deemed to be confidential. Any information, documents and materials obtained vis-a-vis the discovery process may be used only by representatives from the Office of the Arizona Attorney General and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus (and all amendments thereto) pending before this Court. None may be disclosed to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this Court. This Order shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a resentencing, except that either party maintains the right to request modification or vacation of this Order upon entry of final judgment in this matter.
>
> **IT IS FURTHER ORDERED** that Respondents' deposition of Petitioner must specifically relate to assertions Petitioner has made in his habeas petition (or amendments thereto), and for which it is likely that Petitioner has personal knowledge. The questions must be phrased in such a manner that they are directly linked to the federal claim upon which Petitioner is being deposed. Petitioner may assert his Fifth Amendment privilege, but the assertion of that privilege may be cause for the Court to draw an adverse inference in this habeas proceeding.

(Dkt. 258 at 3.)

During the subsequent evidentiary hearing, Petitioner refused to answer Respondents' questions regarding the murder and Petitioner's state of mind at the time of the crime. (RT 11/14/03 at 290-303.) Petitioner ultimately prevailed on his sentencing ineffectiveness claim, *Lambright v. Schriro*, 490 F.3d 1103, 1128 (9th Cir. 2007), *cert. denied*, 552 U.S. 1097 (2008), and this Court entered final judgment in his favor on January 25, 2008. (Dkt. 341.) In October 2008, Respondents moved to modify the protective order to allow the Pima County Attorney's Office access to habeas depositions and discovery (with the exception of Petitioner's own deposition) in preparation for Petitioner's resentencing, then slated to begin in April 2009. (Dkt. 345.)

In lieu of a response to Respondents' motion for modification, Petitioner (now represented by new habeas counsel substituted during appeal) moved for an order to show cause for the protective order violation and to stay the time for responding to the modification motion. (Dkt. 349.) Petitioner's motion asserted, based on an affidavit from Petitioner's current state court counsel, that the AAGO already had provided the Pima County Attorney's Office with its file in this matter and, therefore, the protective order had been violated. According to state defense counsel's affidavit, the Pima County Attorney indicated in a disclosure that it possessed Petitioner's deposition, transcripts from this Court's evidentiary hearing, expert evaluations prepared for the hearing, and an affidavit from Fredrick Neidhardt, one of the witnesses who testified at the hearing. The Court declined to stay briefing and directed the parties to respond to each other's motions. In their response to Petitioner's show cause motion, Respondents stated that the AAGO "inadvertently" sent their entire file to the Pima County Attorney. (Dkt. 354 at 1.) In a supporting affidavit, the assigned prosecutor avowed that his secretary prepared for defense counsel a list of documents contained in the file received from the AAGO but that he had not actually reviewed any of the materials and would not do so absent an order from this Court modifying the order of protection. (Dkt. 355.)

On December 4, 2008, this Court issued an order setting forth in detail the background behind its September 2003 protection order. (Dkt. 357.) The order noted that, although the word "privileged" as a modifier to the phrase "information, documents and materials" had been omitted in the order, it had been the intent of the Court that the order of protection be so limited. (Dkt. 357 at 3.) Accordingly, the Court directed Petitioner to specifically identify, by January 5, 2009, the statements or information that he contended were privileged and should be protected from use at his state court resentencing proceedings. (Dkt. 357.) Rather than respond as directed or move to stay the Court's order, Petitioner filed a notice of appeal from the December 2008 order. (Dkt. 358.)

In a subsequent order, filed March 24, 2009, the Court determined that its December

4, 2008 order was not appealable and, therefore, Petitioner's notice of appeal did not deprive it of jurisdiction to rule on the pending motions. (Dkt. 362.) The Court then addressed Respondents' motion to modify the protective order, ultimately determining that the protective order should be vacated, and summarily dismissed Petitioner's motion for an order to show cause as moot. (*Id.*) Petitioner filed a second notice of appeal. (Dkt. 363.)

After briefing and oral argument, the Ninth Circuit determined that it lacked jurisdiction over Petitioner's appeal of this Court's December 4 order because it was not a final order, did not conclusively determine the modification issue, and was subject to review on appeal if and when a final modification order was entered. *Lambright v. Ryan*, No. 09-99000, at 2-3 (9th Cir. Dec. 21, 2009). With regard to this Court's March 2009 summary dismissal of Petitioner's motion to show cause, the Ninth Circuit observed that this Court had failed to explain the factual and legal basis of its ruling and remanded to resolve any disputed factual questions, make findings as to any violation of the protective order, and determine whether sanctions are warranted. The circuit court also remanded to give Petitioner another opportunity – in view of the one he bypassed by filing a premature notice of appeal – to provide information relevant to Respondents' modification request.

## MOTIONS TO DISQUALIFY COUNSEL AND FOR DISCOVERY & EVIDENTIARY HEARING

In his original motion for an order to show cause, Petitioner requested that the Court determine the extent of any violation of its protective order. (Dkt. 349.) In their response, Respondents acknowledged that a violation of the order had occurred when the AAGO forwarded all of its files in the case to the county prosecutor. (Dkt. 354.) Consequently, in his reply, Petitioner stated that a show cause order was unnecessary and moved for an order "directing that all documents covered by the protective order be returned to Respondents, that Respondents maintain the confidentiality of such documents, and that the documents not be used in the re-sentencing proceedings currently ongoing in the state court." (Dkt. 356 at 3.) Petitioner now argues that the Court must hold a hearing "at which counsel for Respondents

will discuss their actions and Mr. Lambright can prove the prejudice he will suffer as a result of the violation." (Dkt. 376 at 3.) Petitioner further asserts that the AAGO should be disqualified from representing Respondents because its employees are witnesses and are "the only ones who can provide the factual basis necessary for this Court to assess the nature of the violation and the scope of any appropriate sanctions." (*Id.* at 4.)

With respect to the disqualification request, the only support cited by Petitioner is Rule 3.7(a) of the Arizona Rules of Professional Conduct, which provides that a lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . the testimony relates to the nature and value of legal services rendered in the case." The Court finds Petitioner's argument for disqualification based on this rule unpersuasive. Foremost, there is no "trial" pending in this Court. Even if the Court construed a sanctions hearing as a trial, any testimony from AAGO lawyers or staff would be in regard to the "nature . . . of legal services rendered in the case" and thus exempt from Rule 3.7(a)'s proscription of advocate as witness. It is self evident that a party's attorney is not automatically disqualified from representation simply because a court makes inquiry into a discovery violation. Petitioner's motion for disqualification of the AAGO is denied.

Petitioner next argues that discovery and an evidentiary hearing are necessary because the Ninth Circuit remarked in its remand order that the factual circumstances surrounding the violation were not clear, despite the affidavits proffered by Respondents in the record. He requests that Respondents "provide a list of all attorneys and staff with any link to the improper disclosure" and asserts that the exact matter of who had knowledge and when they had it must be addressed. (Dkt. 376 at 6.) The Court disagrees and finds that neither discovery nor a hearing are necessary because there are no disputed issues of material fact.

Respondents have provided several affidavits explaining the circumstances of the file transfer and protective order violation. At oral argument, Petitioner asserted that the avowals of counsel for Respondents are "outside the record" and cannot be verified without further proceedings. However, the proffered statements are sworn affidavits from officers of the

court that set forth their personal knowledge of the events. The Court understands that Petitioner's counsel would like the opportunity to cross-examine the affiants. However, the Court concludes that there is no basis for questioning the affiants' veracity and holding a hearing to have counsel restate what is already in their affidavits would be a waste of time and resources.

The only specific credibility challenge Petitioner makes is to the affidavit of Patricia Nigro, a former Assistant Arizona Attorney General. Ms. Nigro avowed that she was not employed by the AAGO at the time of Petitioner's 2003 evidentiary hearing and, although she was responsible for the case at the time the file was turned over to the Pima County Attorney's Office in 2008, was unaware that it "contained materials arguably covered by a protective order." (Dkt. 373, Ex. B.) Petitioner argues that Ms. Nigro's statement is not credible because "her assertions that she was unaware of the existence of the protective order are simply incorrect." (Dkt. 378 at 4.) However, Ms. Nigro did not deny knowledge of the protective order. Rather, she stated only that she was unaware the file forwarded to prosecutors contained protected materials. This is hardly a "material misstatement" given the fact (discussed more fully below) that there is disagreement over the scope of the protective order and the materials it covered.

Petitioner also argues contradictorily that there is a factual dispute over whether he was prejudiced by the violation but that prejudice is not a factor the Court should consider in determining sanctions. (*Compare* Dkt. 376 at 3 *with* Dkt. 378 at 7.) Regardless, there is no dispute that the materials disclosed to the Pima County Attorney's Office have yet to be used as evidence at Petitioner's resentencing. (Dkt. 355-2 (affidavit of Rick Unklesbay); Dkt. 378 at 2 n.2 (explaining that resentencing proceedings have been essentially stayed pending outcome of the instant litigation).) In addition, Petitioner does not contend that the materials released to the county attorney contain confidential information that could not have been obtained simply from reading the public transcripts of this Court's habeas evidentiary hearing. Thus, it appears that transfer of the file has not resulted in any prejudice and a

hearing to determine prejudice is unnecessary.

Finally, Petitioner argues that the Court should hold a hearing simply to determine whether there are any factual disputes. The Court declines to do so and finds that it has sufficient knowledge of the facts to consider Petitioner's motion for sanctions. Given the absence of any factual dispute, Petitioner's motions for discovery and an evidentiary hearing are denied.

## MOTION FOR SANCTIONS

Rule 37(b) of the Federal Rules of Civil Procedure authorizes a district court to impose a wide range of sanctions if a party fails to comply with a discovery order, including a protective order. *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986); *contra Lipscher v. LRP Publ'n, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) (concluding that violation of protective order not sanctionable under Rule 37(b)(2) because protective order is not "an order to provide or permit discovery"). Sanctions include prohibiting a party from introducing designated matters into evidence or treating the violation as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(ii), (vii). A district court has wide discretion in deciding whether to impose sanctions under Rule 37. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425-26 (9th Cir. 1985). Factors to be considered in crafting an appropriate sanctions order include ensuring that a party complies with a specific order, is deterred generally from similar conduct, and is unable to "profit" from its failure to comply. *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).

In their responsive pleading, Respondents assert that the AAGO "inadvertently" sent their entire file to the Pima County Attorney without realizing that some of the materials contained in the file may have been subject to this Court's protective order. (Dkt. 354 at 1; Dkt. 373 at 6.) The county prosecutor first brought the issue to the attention of the AAGO after Petitioner's state court counsel received in disclosure an index of materials contained in the file that was prepared by the prosecuting attorney's secretary. (Dkt. 355-2 (Affidavit of Rick Unklesbay).) State court defense counsel alerted the prosecutor that some of the

materials identified in the index were protected by this Court's order, and the prosecutor assured both opposing counsel and the Pima County Superior Court that he would not review the documents absent an authorization order from this Court. (*Id.*) Respondents then initiated these proceedings to seek modification of the protective order. The modification request did not state that transfer of the file had already occurred.

The attorneys of record who represented Respondents at the habeas evidentiary hearing and initial litigation of the protective order were no longer employed at the AAGO when the file was transferred five years later. (Dkt. 373 at 8.) Kent Cattani, the Criminal Appeals/Capital Litigation Section Chief, avows that it was his understanding that the protective order was limited to any testimony from Petitioner concerning the facts and circumstances of the offense. (*Id.*, Ex. A.) Because Petitioner ultimately chose not to testify in this regard, "it did not occur" to Mr. Cattani that the AAGO file contained protected materials. (*Id.*) Cattani further avows that he did not intentionally disclose privileged material and has implemented a new policy at the AAGO to ensure that materials subject to a protective order are not released to any third parties. (*Id.*)

These facts are straightforward, and the Court finds no basis to question the veracity of Respondents' explanation concerning the protective order violation. Although the Court intended for its protective order to apply only to privileged materials, the plain language of the order prohibited Respondents from disclosing to a prosecutorial agency "[a]ny information, documents and materials obtained vis-a-vis the discovery process . . . without an order from this Court." (Dkt. 258 at 3.) Thus, the Court finds that Respondents violated the plain language of the protective order when they provided materials obtained through the discovery process to the Pima County Attorney without first seeking modification of the protective order from this Court.[1] The remaining question is whether Respondents should

---

[1] The Court notes that the transcripts from the 2003 federal evidentiary hearing are public records and were not "obtained" through the discovery process. Indeed, Petitioner does not identify the transcripts as documents he asserts are subject to the protective order.

be sanctioned.

In his supplemental reply brief, Petitioner asserts summarily that sanctions are warranted. He does not address or suggest an appropriate sanction, reiterating instead that an evidentiary hearing is necessary to "ascertain the circumstances surrounding Respondents' violation of the protective order." (Dkt. 378 at 7.) As already noted, the circumstances are straightforward and there are no factual disputes requiring a hearing.

In his original reply brief, Petitioner requested that the Court direct Respondents to retrieve from the Pima County Attorney all documents covered by the protective order. (Dkt. 356 at 3.) Petitioner further requested that the Court prohibit the Pima County Attorney from using any of these materials at his resentencing. (*Id.*) The Court concludes that an order directing return of materials subject to the protective order is appropriate. Because Petitioner's resentencing has not yet taken place, such sanction will restore the parties to the position they were in had Respondents not violated the protective order. *See Sumitomo Marine*, 617 F.2d at 1369 ("Rule 37 strictures . . . seek to secure compliance with the particular order at hand.").

The Court further finds that additional sanctions are not warranted. Petitioner requests preclusion of all materials developed in these habeas proceedings. However, a proper sanction should be no more severe than is necessary to prevent prejudice to the victimized party. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1977); *see also* James Wm. Moore et al., Moore's Federal Practice, Ch. 37.41 ("[S]anctions should be tailored to fit the circumstances in which the disobedience occurs."). In cases where a party has acted in "flagrant bad faith" and its counsel have "callous[ly] disregard[ed] their responsibilities,"

---

(*See* Dkt. 375 (listing discovery materials).) Therefore, Respondents' provision of the transcripts to the Pima County Attorney was not a violation of the protective order. Similarly, as more fully discussed *infra*, the protective order did not issue until September 23, 2003. Thus, any discovery materials obtained prior to that date are outside the scope of the protective order and Respondents committed no violation providing them to prosecutors.

more extreme sanctions than mere prevention of prejudice to the victimized party are warranted. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

Here, the Court finds that the AAGO acted erroneously but without willful intent to disobey this Court's order. Petitioner appears to argue that nefarious intent should be implied because Respondents "*should* have known" about the scope of the protective order, have failed to "admit responsibility," and neglected to state in their modification motion that protected materials had already been disclosed to prosecutors. (Dkt. 378 at 3, 5.) While it is true that counsel for Respondents should have known and should have been more forthright with the Court in their initial request for modification that the file transfer had already taken place, they have also admitted that a violation occurred and have implemented new procedures to ensure that unintended disclosure of protected materials does not occur in future cases. Nothing in Respondents' behavior calls for more severe sanctions.

Moreover, prejudice from the violation is minimal. None of the materials have been introduced as evidence at Petitioner's resentencing. In addition, the violation did not result in the disclosure of confidential materials that were otherwise unknowable; Petitioner does not dispute that the information developed during discovery was introduced into evidence at a public hearing. Thus, the prosecution has not gained an unfair advantage by having the AAGO's entire file in its possession – the same information is available simply by reading the public transcripts of this Court's evidentiary hearing on Petitioner's ineffectiveness claim. For all these reasons, the Court will direct Respondents to retrieve from the Pima County Attorney all materials subject to this Court's September 2003 protective order but denies Petitioner's request for more severe sanctions.

## MOTION TO MODIFY PROTECTIVE ORDER

Respondents request that the Court modify its September 2003 protective order to allow prosecutors access to the depositions and discovery obtained during federal habeas proceedings for use in Petitioner's resentencing. (Dkt. 345 at 2.) "A party subject to a

protective order is generally free to return to the issuing court to seek modification of the order." *Osband v. Woodford*, 290 F.3d 1036, 1039 (9th Cir. 2002). Modification is appropriate where, for example, "the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). In addition, a court considering modification should assess whether the material in question was produced in reliance on the protective order. *Id.* at 1137; *see also Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992) (finding minimal reliance on a blanket protective order). Finally, while a court has authority to limit the dissemination of information gathered through discovery, materials submitted to a court during a public hearing or as part of a dispositive motion "lose their status of being raw fruits of discovery." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988)); *Foltz*, 331 F.3d at 1134-35.

## A. Scope of Protective Order

In his post-remand supplemental response to the motion, Petitioner first asks the Court to determine precisely what documents are covered by the protective order. Counsel for Petitioner assert that prior counsel, who represented Petitioner during this Court's evidentiary hearing, failed to maintain a discovery log or index of documents subject to the protective order. (Dkt. 374 at 3.) To this end, new counsel have compiled a list of documents they believe should be subject to the order, which include all expert reports, interviews, depositions, and testing data; all medical, military, school, prison, and vital records; and all fact witness declarations, depositions, and interviews. (Dkt. 375.) However, Petitioner does not identify *when* these documents were disclosed to Respondents.

Petitioner's motion for a protective order – addressed only to the scope of questioning during his own deposition by Respondents – was filed on September 2, 2003. (Dkt. 248.) Prior to that, beginning in June 2002, Petitioner willingly engaged in discovery and

disclosure without the benefit of a protective order. Indeed, he was examined by his own experts on October 28 and December 3, 2002, and Respondents' experts on July 25 and 30, 2003. (Dkts. 197, 204, 232, 235.) The Court's protective order, entered on September 23, 2003, does not state that it applied retroactively. Thus, the only materials that fall within the scope of the order are those that were disclosed after the order issued on September 23, 2003.

## B.    Need for Modification

Petitioner opposes Respondents' motion on several grounds. He argues that the order should not be modified or vacated because Respondents failed to provide notice that they would attempt to modify the terms of the protective order and because modification "would violate the trust Lambright placed in the Court during his deposition and testimony at the hearing." (Dkt. 352 at 3, 5.) Petitioner also asserts that he relied on the broad language of the Court's protective order in litigating his case and contends that modification is inappropriate because the Court gave him verbal assurances during the habeas evidentiary hearing that his testimony would not be used against him at a later resentencing. (*Id.* at 7 (citing RT 11/14/03 at 292).) The Court is unpersuaded.

First, the Court expressly stated in its protective order that either party could seek modification or vacation of the order upon entry of final judgment; therefore, Petitioner's argument that Respondents' modification request is tardy and that he lacked notice that modification would be sought is unavailing. In addition, as noted by the Ninth Circuit in *Osband*, "A party subject to a protective order is generally free to return to the issuing court to seek modification of the order." 290 F.3d at 1039. Petitioner's implicit argument – that a protective order can never be modified – necessarily fails.

Second, the Court finds that Petitioner did not rely on the Court's protective order in conducting discovery in this matter. As already noted, Petitioner willingly engaged in discovery prior to requesting a protective order regarding his deposition. Although it appears depositions of lay and expert witnesses may have occurred after the protective order was requested and issued, the experts' evaluations were undertaken without the benefit of any

- 13 -

protective order.  (*See* Dkts. 197, 204, 232, 235.)  In addition, despite the protective order, Petitioner refused to answer questions during the deposition that related to his role in the crime.  (Evid. Hrg. Ex. 21 at 59-65.)  There is simply no evidence to support Petitioner's claim that he relied on the protective order in litigating this case.

Further, Petitioner sought only a narrow protective order.  The Court chose for expediency's sake to provide blanket protection and did not require Petitioner to make a "good cause" showing under Rule 26(c) of the Federal Rules of Civil Procedure for protection of every document obtained through discovery.  Instead, the Court provided that the order would be subject to modification or vacation if and when Petitioner faced a resentencing proceeding.  Accordingly, Petitioner's reliance was clearly minimal, and, other than providing the prosecution a "preview" of his case, he does not allege specific prejudice or harm from use of the habeas discovery materials at his resentencing.  *See Beckman Indus.*, 966 F.3d at 475-76 (noting there is less reliance on a blanket protective order and stating that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test).

Third, Petitioner's alleged reliance on the Court's verbal assurances during the evidentiary hearing that "the *information in question* would not be used against him at a later resentencing" misstates the record.  (Dkt. 352 at 7 (emphasis added).)  During the evidentiary hearing, Petitioner refused to answer Respondents' questions regarding the murder and his state of mind at the time of the crime.  (RT 11/14/03 at 290-303.)  Consequently, the Court reiterated that it had issued a protective order so that, in the event the petition was granted and Petitioner was subjected to a new sentencing hearing, "*your testimony concerning the crimes in this case* that you would not otherwise answer but decide to answer could not be used against you in connection with that hearing." (*Id.* at 292 (emphasis added).) Petitioner's counsel remarked that he thought the protective order applied only to Petitioner's deposition testimony but nonetheless advised his client against testifying.  (*Id.*)  The record is clear that the Court offered during the evidentiary hearing an extension of the discovery

protective order solely to protect any testimony by Petitioner concerning the underlying crime.

Because the Court inadvertently omitted the word "privileged" in its protective order, a literal reading of the order states that it applies to "[a]ny information, documents and materials obtained vis-a-vis the discovery process." (Dkt. 258 at 3.) However, it is apparent, when considered in context with the original motion and oral argument in support of the motion, that the Court intended its protective order to address only the concerns set forth in *Bean* and *Bittaker*. The second paragraph of the protective order tracks *Bean* and protects Petitioner's Fifth Amendment right against self-incrimination, the only real concern raised by Petitioner in his motion for a protective order. The first paragraph was intended to track *Bittaker*. Although the Court did not include the word "privileged" as a modifier to the phrase "information, documents and materials," it is evident from a reading of *Bittaker* that a protective order's necessity derives solely from the need to protect the attorney-client privilege.

In *Bittaker*, the court recognized the tension between the rule that a petitioner waives his attorney-client privilege by making an ineffectiveness claim against his attorney and the important policy behind the privilege – that of encouraging "frank attorney-client communications." 331 F.3d at 722. "If the federal courts were to require habeas petitioners to give up the privilege categorically and for all purposes, attorneys representing criminal defendants in state court would have to worry constantly about whether their casefiles and client conversations would someday fall into the hands of the prosecution." *Id.* Consequently, the *Bittaker* court held that a petitioner's waiver should be drawn as narrowly as possible so that if the petitioner were successful on his ineffectiveness claim, he would not be prejudiced upon any retrial by giving the prosecution the advantage of using information gathered *by the first defense lawyer. Id.* at 722-23. Thus, a protective order under *Bittaker* limits use during retrial only of *privileged* materials obtained by invoking a federal habeas court's power of compulsory discovery.

- 15 -

Based on the principles of *Bean* and *Bittaker*, this Court's order of protection was intended to shield Petitioner from prejudice at resentencing from (1) any statements he made during his deposition concerning the crime, and (2) any information subject to the attorney-client or work-product privilege obtained during discovery. Because the plain language of the order extends beyond the parameters of privileged material – and Petitioner did not rely on the Court's mistake to litigate his ineffectiveness claim – modification is appropriate. Accordingly, the Court will modify the protective order so that it is narrowly tailored to protect only those documents disclosed after September 23, 2003, that qualify for protection under the attorney-client, work-product, or Fifth Amendment privileges.

### C. Identification of Privileged Materials

In his supplemental response to Respondents' modification motion, Petitioner lists numerous materials that he claims are privileged. Citing *Bittaker*, Petitioner argues that the prosecution is not entitled to "exploit Mr. Lambright's decision to litigate an ineffective-assistance claim . . . by using against him the information disclosed as part of that litigation that would otherwise be privileged pursuant to the attorney-client or work-product privilege." (Dkt. 374 at 7.) He lists the following items he claims are subject to the attorney-client, work-product, and Fifth Amendment privileges:

Attorney-Client Privileged Materials

- Memorandum by habeas counsel re: raw data from state court psychological evaluation
- Depositions/interviews of trial counsel Carmine Brogna and Thomas Higgins
- Deposition of Lambright
- Declaration of habeas counsel re: meetings with Brogna & Higgins
- 1981 letter from Brogna to Pima County Superior Court Judge

Work-Product Privileged Materials

- Memoranda by habeas counsel
- Deposition of trial counsel Brogna

- Transcribed interview of Wanda Hadley (lay witness)

- Deposition of Lambright

- Declaration of habeas counsel re: meetings with Brogna & Higgins

- Trial counsel Brogna's affidavits/requests for payment

- 1981 letter from Brogna to Pima County Superior Court Judge

Fifth Amendment Privileged Materials

- Interviews/depositions of Petitioner's & Respondents' habeas experts (Drs. French, Lang, Morenz, and Hinton)

- Depositions/interviews of trial counsel Brogna and Higgins

- Deposition of Lambright

- Transcribed interview and affidavit of Frederick Neidhardt (lay witness)

- Transcribed interview and affidavit of Sylvia Scott (lay witness)

- Declaration of habeas counsel re: meetings with Brogna & Higgins

Petitioner argues that each of the above-listed items were produced in furtherance of his ineffective assistance of counsel claim and in reliance on the protective order and thus should remain protected. However, "[a] party claiming privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted. *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977)). Besides failing to identify specific communications or the relevant date of disclosure, it is simply not clear from Petitioner's brief how or why the attorney-client or work-product privilege applies to these materials. Nor has Petitioner identified any compelled testimony from Petitioner or otherwise explained how the Fifth Amendment right against self-incrimination is relevant to the above-listed documents. As Respondents note, "[t]he privilege against self-incrimination is only properly invoked when the communication is testimonial, incriminating, and compelled." (Dkt. 377 at 4.)

Excluding Petitioner's deposition (which Respondents assert should remain subject

to the protective order absent a request for further modification), the only items that may arguably contain privileged attorney communications or work product are the interviews and depositions of trial counsel. However, Petitioner has failed to identify what in these transcripts is privileged; thus, the Court cannot ascertain whether use of any of these materials at his resentencing would result in prejudice.

It is also unclear how interviews and depositions of lay and expert witnesses during habeas proceedings are subject to the attorney-client/work-product privilege at issue in *Bittaker*. Indeed, it appears that Petitioner misapprehends the scope of *Bittaker* by asserting that the protective order applies to attorney-client communications and work product from his *habeas* proceedings, not his trial and sentencing. It is clear from a reading of *Bittaker* that the privilege at issue is the one between Petitioner and the attorney(s) against whom he has alleged ineffectiveness, not his subsequent collateral counsel. The *Bittaker* court expressly noted that waiver of the privilege accompanying litigation of an ineffectiveness claim must be limited to adjudication of the claim because "extending the waiver to cover [Petitioner's] retrial would immediately and perversely skew the second trial in the prosecutor's favor by handing to the state *all of the information in petitioner's first counsel's casefile*." 331 F.3d at 722 (emphasis added). *Bittaker* does not address non-privileged materials developed by habeas counsel; it is concerned only with privileged communications that would not have been revealed but for the allegation of ineffectiveness.

Petitioner appears to acknowledge this but argues nonetheless that non-privileged documents also should be protected from use in subsequent state proceedings because *Bittaker* requires this Court to "restore" him "to the position he would have occupied had the first trial been error-free." (Dkt. 374 at 9.) This argument was first introduced by the Ninth Circuit in its order remanding the case:

> [Because of his premature appeal,] Lambright had no opportunity to explain whether, in his view, *non*-privileged material or materials that did not emerge through the discovery process warranted protection, given this court's rationale in *Bittaker v. Woodford*: "If a prisoner is successful in persuading a federal court to grant the writ [of habeas corpus], the court should aim to restore him

to the position he would have occupied, had the first trial been constitutionally error-free."

*Lambright v. Ryan*, No. 09-99000, at 5-6 (9th Cir. Dec. 21, 2009). Petitioner essentially reads this part of the remand order to require, as a matter of equity, that the unintentionally broad protective order remain in effect solely to return him to the *status quo* and prevent the Pima County Attorney's office from getting "a free preview of his case at resentencing." (Dkt. 374 at 10.) This Court can find no support for such an expansive reading of *Bittaker*. Furthermore, taken to its logical conclusion, such an interpretation of *Bittaker* would also require that materials developed by Petitioner's federal habeas counsel be precluded from use at resentencing, forcing his state court counsel to enlist new experts and reinvestigate mitigation. Because the materials Petitioner seeks to maintain under the protective order are "sufficiently relevant to the collateral [resentencing] litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order," the Court concludes that modification is appropriate. *Foltz*, 331 F.3d at 1132.

Moreover, it is well settled that the public has a common law right of access to judicial documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999). Because Petitioner did not seek to seal any of the materials submitted and testified to during the evidentiary hearing in support of his habeas claim, those materials became a matter of public record. As the Ninth Circuit in *Foltz* recognized:

> When discovery material is filed with the court, however, its status changes. If the documents are not among those which have traditionally been kept secret for important policy reasons, then the public policy reasons behind a presumption of access to judicial documents (including judicial accountability, education about the judicial process etc.) apply.

331 F.3d at 1134 (internal citations and quotations omitted); *see also Phillips*, 307 F.3d at 1213. Thus, although discovery in a civil case is ordinarily treated as private among the parties, a hearing in federal court is a public proceeding and, absent a request to seal, information filed in connection with such a hearing is outside the scope of a Rule 26(c)

protective order. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default.").[2]

## D.  Conclusion

In *Phillips v. General Motors Corp.*, the Ninth Circuit held that the public is permitted "access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." 307 F.3d at 1210. It follows, then, that a party who has never made a "good cause" showing under Rule 26(c) may not rely solely on a protective order to justify refusal to modify that order in response to a request for disclosure. Petitioner has made no effort to establish good cause for any specific materials or information obtained by Respondents during pre-hearing discovery in this case. Nor has he identified privileged materials uncovered during discovery or asserted any specific prejudice arguments concerning the use of the discovery materials during resentencing. On this record, the Court concludes that its September 2003 protective order should remain in effect only as to the transcript of Petitioner's deposition.

## STAY OF MODIFICATION ORDER

The aspect of this order modifying the September 2003 order of protection will be stayed pending any appeal. The Court's order directing Respondents to retrieve from the

---

[2]     In *Kamakana*, the Ninth Circuit recognized an exception to the right of public access for documents that have "traditionally been kept secret for important policy reasons." 447 F.3d at 1178 (citing *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)). At argument, Petitioner argued that attorney-client materials fall into this category. The *Kamakana* court, however, identified only two types of documents that are exempt from public access: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation. *Id.* at 1178, 1185. The court further observed that classes of documents are not added to the "traditionally kept secret" category "simply because such documents are usually or often deemed confidential" and rejected an argument that documents subject to "privacy, law enforcement, and official information privileges" are traditionally kept secret. *Id.* at 1185. Thus, it does not appear that attorney-client materials are *per se* exempt from the presumption of public access.

Pima County Attorney all "information, documents and materials obtained vis-a-vis the discovery process" in these federal habeas proceedings after entry of the protective order on September 23, 2003, is effective immediately and will not be stayed.

Based on the foregoing,

**IT IS ORDERED** that Petitioner's Motion for Discovery and an Evidentiary Hearing Relating to Petitioner's Motion for an Order to Show Cause and Motion to Disqualify the Office of the Arizona Attorney General (Dkt. 376) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Order to Show Cause (Dkt. 349) is **DENIED IN PART AND GRANTED IN PART**. Respondents shall immediately retrieve from the Pima County Attorney all "information, documents and materials obtained vis-a-vis the discovery process" in these federal habeas proceedings after entry of the protective order on September 23, 2003, and shall expeditiously file notice with the Court identifying these materials and indicating compliance with this Order. To the extent Petitioner seeks further sanctions for Respondents' violation of the Court's protective order, that request is denied.

**IT IS FURTHER ORDERED** that Respondents' Motion to Modify Protective Order (Dkt. 345) is **GRANTED**. Absent further order of the Court, the protective order entered September 23, 2003, shall remain in effect only as to the transcript of Petitioner's deposition.

**IT IS FURTHER ORDERED** that this Court's modification of the September 23, 2003 protective order shall be stayed in the event appellate review of this Order is sought.

DATED this 4th day of May, 2010.

_____
John M. Roll
Chief United States District Judge